IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. TACCINO,
CAROL J. TACCINO,

    Plaintiffs,

v.

DONALD J. TRUMP,
CHRISTOPHER WRAY,
CHRISTIE CLARK,
MISTY MICHAELS,
CRAIG ROBERTSON,
LARRY BENNETT,
JASON MERRITT,
GORMAN E. GETTY, III,
JOHN JAMES JONES,
HALEY ZACHARY TAYLOR FROST,
JAMES FROST,

    Defendants.

Civil Action No.: JKB-22-1981

**MEMORANDUM OPINION**

On August 9, 2022, this Court received the instant Complaint, filed by self-represented Plaintiffs William A. and Carol J. Taccino, along with a motion to proceed in forma pauperis which the Court now grants. ECF Nos. 1, 2. For the reasons stated below, the Complaint must be dismissed.

**I.   COMPLAINT ALLEGATIONS**

Plaintiffs assert that their constitutional rights were violated in connection with a repossession of four cars that were on their property, which they claim was without justification. They explain that on January 4, 2021, Defendant Jason Merritt, employed by "Act 1st FCU" to repossess four of their automobiles, came onto their property "without a mask." ECF No. 1 at 4–5. Plaintiffs claim that Merritt told them that he does not wear a mask and stated he was "taking the cars and you can't stop me." *Id.* at 5, ¶ 1. After Merritt allegedly threatened William Taccino,

Merritt suggested that both of them call the credit union to "try to work something out." *Id.* at ¶ 5. Plaintiffs aver that Merritt said he would be back "after Thursday" because "he was going to Washington Wednesday, and he might get killed." *Id.* The Wednesday Merritt was referring to was January 6, 2021.

On April 13, 2021, Plaintiffs reported Merritt to the FBI after the FBI asked the public for help identifying people who participated in January 6th. *Id.* at 5, ¶ 6. Plaintiffs state Defendant Chris Wray was the "Trump-appointed FBI Director" and that Wray had characterized "the January 6th Capital riots as acts of domestic terrorism." *Id.* Mr. Taccino informed the FBI about "Merritt's unlawful acts on Jan. 4, his threats of violence, which occurred on Plaintiffs' property, and his statements that he would be back for the cars after Wednesday." *Id.*

Plaintiffs state that Merritt came back to their property on May 26, 2021, "not wearing a mask, and began to illegally take possession of 4 antique automobiles owned by the Plaintiffs." *Id.* at 5, ¶ 7. According to Plaintiffs, Merritt was "hired by Act 1st Federal Credit Union" and was "apparently in a conspiracy with Allegany County Sheriff's Deputy Larry Bennett and 2 persons from Kiff Towing and Recovery." *Id.* Plaintiffs allege that, by the time Mr. Taccino got outside, "these 4 unmasked bandits (?) were already dragging 2 cars onto rollbacks." *Id.* at 6, ¶ 8. When Mr. Taccino asked Deputy Bennett to "see a court order," Bennett said he would give it to Mr. Taccino after the cars were moved. *Id.* After the four cars were loaded, Bennett gave Mr. Taccino a piece of paper, and Mr. Taccino "discovered it was not legal because it was not lawful process and that these conspirators, hired by Act 1st FCU, had stolen these cars." *Id.* at 6, ¶ 13.

Mr. Taccino contacted the FBI on May 27, 2021, he again reported "unlawful actions committed by Jason Merritt and his accomplice ACSD Larry Bennett, including theft of 4 of the Taccino's vehicles." *Id.* at 7, ¶ 14. Plaintiffs accused Merritt and Bennett of "conspiracy, trespassing, falsifying court documents and illegal service of such." *Id.* Mr. Taccino was advised

to contact the State's Attorney about the alleged theft of his vehicles and if "nothing happened, he was to call the FBI again." *Id.* The following day, Mr. Taccino contacted the FBI again to give them additional information on the "4 stolen vehicles." *Id.* at ¶ 15.

On June 15, 2021, Mr. Taccino received a phone call from Glen Hartanft, an FBI agent from the Baltimore office, who advised Mr. Taccino that "there was a mistake in the court papers served on them" and that he should have gone to court to verify them. *Id.* at 7, ¶ 17. Apparently dissatisfied with Hartanft's response, Mr. Taccino advised that Merritt and Bennett's actions could have caused someone to be killed "in the commission of these crimes" and that "if confronted by him or his accomplice again, Mr. Taccino . . . would take immediate action to defend his life and home against them." *Id.* Mr. Taccino then told the agent that if the "FBI wanted to arrest him for making this, not a threat, but a promise, to go for it." *Id.*

According to Plaintiffs, they did not hear from anyone about their vehicles for two months. *Id.* at 8, ¶ 26. On October 24, 2021, Mr. Taccino saw that three of his cars were posted for sale on "Facebook's Market Place and various Chrysler Imperial group websites" by Defendant Haley Zachery Taylor Frost, who claimed to have clear titles on the cars. *Id.* at 8–9, ¶ 27.

Following this discovery, Plaintiffs received notice from Act 1st that the cars had been sold for $3,000 each and that they were seeking over $31,000 from Plaintiffs for "towing, storage, and appraisal fees." *Id.* at 9, ¶ 28. Plaintiffs were advised that if they did not pay the fees, legal action would be taken against them to collect it. *Id.* On November 2, 2021, Plaintiffs received a notice from Act 1st FCU that the insurance on two of the vehicles had expired and that Plaintiffs would be required to submit proof of insurance, or they would have to pay $1,473 for insurance. *Id.* at 9, ¶ 29. Plaintiffs also received statements from Act 1st FCU on October 22 and December 31, 2021, showing an unpaid balance of $32,464.43. *Id.* at 9, ¶ 32. The balance included a "towing bill to Defendant Kiff in the amount of $400.00, storage to Defendant J&J in the amount of $9,000.00,

3

an appraisal fee for the vehicles to Defendant Merritt/East Coast Auto Appraisers in the amount of $1400.00." *Id.*

On January 21, 2022, a trial was held in the Circuit Court for Allegany County on a complaint Plaintiffs filed against Act 1st FCU. *Id.* at 9, ¶ 33.[2]

As to each named Defendant, Plaintiffs allege the following:

(1) Defendant former President Donald J. Trump refused to support and defend the Constitution against all enemies, foreign and domestic, which was "a conspiracy against rights of the Plaintiffs and every citizen in the United States of America" (*id.* at 11, ¶ 37).

(2) Defendant Director of the FBI Christopher Wray: (a) conspired against Plaintiffs with Jason Merritt by not doing his duty to charge Merritt in connection with the January 6, 2021 riot, allowing Merritt to violate Plaintiffs' Fourth Amendment right against unreasonable search and seizure (*id.* at 12, ¶ 42); (b) the FBI's failure to act on Plaintiffs' claims of illegal service by Act 1st FCU, Merritt, and Bennett equates to conspiracy to obstruct justice and to violate Plaintiffs' Fourth Amendment rights (*id.* at 13, ¶ 47); (c) the FBI's "bad advice" to Plaintiffs to "negotiate with the domestic terrorists Act 1st FCU and Merritt" amounted to a violation of Plaintiff's Fourth Amendment rights (*id.* at 13, ¶ 48); (d) the FBI conspired with Merritt "against the American people by refusing to do their duty to protect the American people when they refused to charge Defendant Merritt" in connection with his alleged participation in the January 6, 2021 riot (*id.* at ¶ 49);[3] and (e) Defendant Wray has conflict of interest as a Trump-appointed official and "must

---

[2] Although Plaintiffs do not state what the outcome was of the case in the State court, the docket entries available on Maryland Judiciary Case Search indicate the complaint was dismissed after a hearing held on January 21, 2022. *See Taccino v. Act 1st FCU*, Civ. Action C-01-CV-21-000017 (Allegany Cir. Ct. 2021) at http://casesearch.courts.state.md.us/inquiry (last viewed Aug. 18, 2022).
[3] Additional counts against the FBI are similar in content and focus on an alleged violation of the Fourth Amendment. ECF No. 1 at 14, ¶¶ 50, 51.

4

resign or be terminated to prevent future harm to the American people or the U.S. Government" (*id.* at 14, ¶ 52).

(3) Defendants Act 1st FCU, CEO Christie Clark, and Collections Manager Misty Michaels conspired to illegally take possession of four of Plaintiffs' cars and to falsify court documents; trespassed on Plaintiffs' property and violated the repossession moratorium in place at that time; conducted an illegal search and seizure; committed grand theft auto; violated provisions in the Commercial Code under Maryland law; committed fraud; injured Plaintiffs' credit; attempted to extort money from Plaintiffs; and obstructed justice (*id.* at 16-18, ¶¶ 54–67).

(4) Defendant Jason Merritt knowingly and willfully trespassed on Plaintiffs' property on two occasions; jeopardized Plaintiffs' health and the health of the general public by refusing to wear a mask on two occasions; obstructed justice when he said he did not need a court order; threatened unlawful force to take possession of Plaintiffs' cars; threatened domestic terrorism causing Plaintiffs to worry about when he would return; conspired with the FBI and Act 1st FCU/ Misty Michaels and defendant Bennet to take possession of Plaintiffs' cars; acted as an accessory to violate Plaintiffs' Fourth Amendment rights; committed grand theft auto; and engaged in domestic terrorism (*id.* at 20–21, ¶¶ 69–79).

(5) Defendants Allegany County government, Sherriff Craig Robertson, and Sherriff's Deputy Larry Bennett conspired to violate Plaintiffs' Fourth Amendment rights; obstructed justice by conducting an unreasonable search and seizure; and abused power and authority by behaving as though they were above the law (*id.* at 22–23, ¶¶ 80–84).

(6) Defendants Kiff Recovery and Towing and its CEO Gorman E. Getty, III conspired to commit fraud, grand theft auto, and trespassing; and attempted to extort money from Plaintiffs for towing the "4 vehicles stolen" (*id.* at 24, ¶¶ 86–87).

(7) Defendants J&J Towing and Storage and Owner John James Jones conspired with Act 1st FCU, Merritt, Bennett, and Kiff to commit fraud and grand theft auto; and conspired with Act 1st FCU to extort money from Plaintiffs (*id.* at 25, ¶¶ 89–90).

(8) Defendant Haley Zachary Taylor Frost conspired with Act 1st FCU to commit fraud and to purchase stolen goods; and violated Maryland vehicle law by operating an unlicensed vehicle dealership (*id.* at 26, ¶¶ 92–93).

(9) Defendant James Frost conspired to commit fraud, received stolen goods, and operated an unlicensed vehicle dealership (*id.* at 27, ¶ 95).

As relief, Plaintiffs seek monetary damages. ECF No. 1 at 45–56. They request a jury trial and request recusal of Judge George Levi Russell, III and the undersigned "due to conflicts of interest," which Plaintiffs do not describe.[4] *Id.* at 67.

## II.  STANDARD OF REVIEW

As noted, Plaintiffs filed their Complaint *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), which permits an indigent litigant to commence an action in this Court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires dismissal of any claim that is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). This court is mindful, however, of its obligation to liberally construe self-represented pleadings, such as the instant Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating such a complaint, the factual allegations are assumed to be true. *Id.* at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901

---

[4]  Because plaintiffs offer no factual support for their request for recusal, it is denied.

6

F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented."). In making this determination, "[t]he district court need not look beyond the complaint's allegations.... It must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White,* 886 F.2d 721, 722-723 (4th Cir. 1989).

Further, federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). They "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010), *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006) (Fed. R. Civ. Proc. 12(b)(1) authorizes lack of subject-matter jurisdiction to be raised by a party or by a court on its own initiative at any stage in the litigation). Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); accord *Hertz,* 599 U.S. at 96; *McBurney v. Cuccinelli,* 616 F.3d 393, 408 (4th Cir. 2010).

## III. DISCUSSION

### A. Claim Against Former President Trump

Plaintiffs' claim against the former president for his inciting a riot does not state a cognizable claim. A generalized grievance with the manner in which Mr. Trump spoke to a crowd of his supporters and his failure to defend the Constitution does not imbue Plaintiffs with a cause of action because they, along with millions of others, are American citizens. "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

To demonstrate constitutional standing, three elements must be established by a plaintiff: (1) that he or she "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical;'" (2) that there is a "casual connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant;" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. The injury required for standing need not be actualized. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct. *Id.* Here, there is no logical connection between Mr. Trump's alleged failure to defend the Constitution and Plaintiffs' loss of their vehicles through repossession.

8

### B. Claims Against Repossession Defendants

The claims raised by Plaintiffs against the Defendants who were directly involved in repossessing Plaintiffs' cars do not involve State action and, therefore, cannot form the basis of a federal constitutional claim. Further, Plaintiffs have not alleged any other federal causes of action here, but rather appear to assert various types of fraud and violations of Maryland law.

Essential to sustaining an action under § 1983 are the presence of two elements. Specifically, the Plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Private actors, such as the officials at the Act 1st FCU, Jason Merritt, Kiff Towing and Recovery and CEO Gorman Getty, John James Jones, Haley Zachary Taylor Frost, and James Frost, cannot be said to have engaged in State action absent an allegation that they were acting under color of law. These Defendants were engaged in private conduct to repossess collateral securing loans taken out by Plaintiffs. Even if these Defendants were incorrect in their conclusions that Plaintiffs defaulted on their loans, their conduct does not amount to State action.

### C. Claims Against FBI Defendants

The claims raised against the FBI and FBI Director Christopher Wray, amount to Plaintiffs' disagreement with, presumably, a decision not to act on the information that was provided to them by Plaintiffs about Defendant Jason Merritt. However, it is well-settled law that there is no legally protected interest in the prosecution of others. The Supreme Court said in *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973): "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See also Banks v. Buchanan*, 336 Fed. App'x 122, 123 (3rd Cir. 2009); *Sargeant v. Dixon*, 130 F.3d 1067, 1069

(D.C. Cir. 1997); *Sibley v. Obama*, 866 F. Supp.2d 17, 20 (D.D.C. 2012); *Speight v. Meehan*, 2008 WL 5188784, 3 (E.D. Pa. Dec. 9, 2008). To the extent that Plaintiffs are alleging that the FBI's failure to arrest Merritt based on their claim that he engaged in an insurrection somehow enabled Merritt to repossess their cars, the claim is patently frivolous.

### D. Claims Against Alleghany County Defendants

Plaintiffs' claims against Allegany County Sherriff Craig Robertson and Sherriff's Deputy Larry Bennett imply that these Defendants knew or had reason to know that the repossession of Plaintiffs' cars was not only improper, but a criminal act. Nowhere in the fifty-eight-page Complaint, however, have Plaintiffs explained the basis for their conclusory allegation that repossession of their cars was improper. For example, Plaintiffs rely on their own self-serving letters written to contest the validity of the repossession. *See* ECF No. 1-2 at 10–13, 15. Plaintiffs' allegations against these Defendants are vague and wholly conclusory and the claims against these Defendants cannot survive.

### IV. CONCLUSION

For these reasons, the Complaint shall be DISMISSED by separate order which follows.

Dated this __16__ day of September, 2022.

FOR THE COURT:

_____
James K. Bredar
Chief Judge

10